Opinion by
Head, J.,
On February 4, 1888, the court of quarter sessions of Luzerne county, after a hearing in a desertion case, sentenced the defendant, the present appellant, “to pay the costs of prosecution, pay to his wife on the 20th day of each month $12.00 for her support and maintenance, to give security in the sum of $300, with one or more sufficient sureties for the faithful performance of the above order as to future maintenance and support, and to stand committed,” etc. In May, 1888, after having served a term of imprisonment of three months and upwards, the defendant applied to the same court of quarter sessions for his discharge, and, as a result of said application, was on the seventeenth of that month discharged.
Twenty-three years later, in October, T911, the defendant came on a visit to Luzerne county from Virginia where he had been living in the Soldiers’ Home at Hampton in that state. On motion of the district attorney the court *332 of quarter sessions of Luzerne county awarded a capias “for the purpose of enforcing compliance with the sentence imposed in the above case.” A motion was made for the discharge of the defendant, and after argument the learned court below held that it appeared by the record that the defendant had been discharged under the Act of June 13, 1883, P. L. 99; that he could not properly be included in any of the classes of persons for whose discharge from imprisonment that act provided; that as a consequence his discharge was unauthorized by law, and he was therefore committed to the county prison “until the sentence of October 4th, 1888, be complied with.” From that order this appeal was taken.
We may concede that the act of 1883 was not intended to authorize the discharge of a prisoner who had been sentenced under the Act of April 13, 1867, P. L. 78, in a desertion proceeding and had failed to comply with the order of the court requiring him to pay certain stipulated sums of money and to give security for his compliance with such sentence. If the discharge of the defendant in 1888 rested on no other authority than that conferred upon the court by the act of 1883, his discharge was without legal warrant. By the Act of April 15, 1869, P. L. 75, however, the legislature provided, “That whenever the court of quarter sessions of any county within the commonwealth shall under the second section of the act to which this is a supplement, commit the person complained of to the county prison, there to remain until he comply with their order or give security, it shall be lawful for the said court at any time after three months, if they shall be satisfied of the inability of such person to comply with the said order and give such security, to discharge him from imprisonment.” Here then was a clear grant by the legislature of authority to the court of quarter sessions to discharge the defendant who had been committed under the sentence already quoted. The legislature, in granting such authority, designated but two conditions which must exist to justify its exercise, to wit, the applicant for the dis *333 charge must have served an imprisonment of three months, and the court to whom such application might be made must be satisfied of the inability of the prisoner to comply with the sentence. No form is prescribed by the statute in which the application for such discharge must be made. If made by petition, there is no requirement that the petition should set forth any particular facts save the essential one that the applicant had served a three months’ term of imprisonment. The court, being advised by petition or otherwise of the existence of that fact, was at liberty to satisfy itself by such means as it deemed most fitting of the inability of the applicant to comply with the terms of the original sentence. In such case, the judge hearing the application could properly avail himself of any knowledge he might possess as to the financial condition, social relations and standing of the applicant, and he might supplement such knowledge by any of the means ordinarily used by judges who are authorized by law to exercise discretionary powers. He might, perhaps should, require the applicant to file a sworn schedule of any property he possessed, or to declare under oath that he possessed none. He might with propriety appoint an auditor or commissioner to take testimony as to the truth of the statement that the prisoner was unable to comply with the terms of his sentence. When satisfied-of that important fact by any proper means he might adopt, his discharge of the prisoner would be clearly authorized by the act of 1869 already quoted.
Now in presenting his application to the court for a discharge, the applicant voluntarily attached thereto the schedules required by the act of 1883 of persons within the purview of that act applying for the discharge therein authorized. This could in no way oust the jurisdiction of the court to grant the discharge authorized by the act of 1869 nor justify the conclusion that the discharge which followed could have no vitality or effect unless it could be shown that the applicant belonged to some one of the classes whose discharge would be authorized by the act of *334 1883. As a result of the application, accompanied by the schedules referred to, the court of quarter sessions, being the same, court which had sentenced the defendant, made the following order, viz.: “The county commissioners are authorized to discharge the above named William Bowman without the delay and expense of proceedings under the insolvent laws subject to the provisions of the Act of Assembly approved the 13th day of June, a. d. 1883, provided they are of the opinion that he is unable to pay the costs and the amount directed to be paid the prosecutrix for her support.” Had the learned judge, who then presided in the court of quarter sessions of Luzerne county, simply made an order discharging the prisoner, we do not understand that it would now be contended that such order would not have been fully authorized by the act of 1869, and therefore effective to relieve the defendant from further imprisonment by reason of the sentence. Does the fact that the order contains a stipulation that the applicant must satisfy the county commissioners of the truth of his statement, that he had no property and was unable to comply with the sentence of the court, destroy the vitality and force of the order for his discharge?
We have already shown that the court was fully warranted by the act of 1869 in ordering such discharge. It appears as a fact of record, and it is not denied, that at the time of the application the defendant had served a three months’ term of imprisonment. He was in a position therefore to properly invoke the exercise of the discretionary power conferred upon the court by the act of 1869. The one thing remaining was for him to satisfy the conscience of the court of his inability to comply with the terms of the sentence. As we have already seen, the schedules which he filed with his petition were calculated to produce in the mind of the court the conclusion desired. When the order of discharge was made effective on condition that the applicant should satisfy the county commissioners of the truth of what was stated in the schedules, we cannot *335 agree with the learned judge below that the entire proceeding was, on that account, conclusively classified as one under the act of 1883; and that the order thereby was stripped of the force and effect that would have been incident to it had it been accompanied with no conditions whatever.
It is the practice in many counties in such cases to require a defendant, applying for his discharge, to enter into his own recognizance for the future payment of the moneys which he was required by the sentence to pay. Such a practice was approved in Com. v. James, 142 Pa. 32. In that case it was held that a defendant is not entitled to be unconditionally discharged merely because he has served a three months’ term of imprisonment. It follows, therefore, that the court of quarter sessions, in considering the application of the defendant for his discharge, might impose reasonable terms. The act of 1883, already referred to, expressly provided that in cases under that act the discharge should not prevent the commonwealth or any person interested from proceeding by action, etc. The order of May 17, 1888, discharging the prisoner in this case, was made "subject to the provisions of the Act of Assembly approved the 13th day of June, a. d. 1883.” No complaint was then or is now made by the defendant of the imposition of such a condition as an incident to his discharge, and we cannot think that the order, otherwise valid under the act of 1869, became unauthorized and unlawful because of the inclusion of such a condition.
In a word, then, the defendant, after having completed his three months of imprisonment, was in a position to invoke the exercise of the discretionary power of discharge conferred upon the court of quarter sessions by the act of 1869. He applied for such discharge and his application was granted on terms which in no way, as we view the order, impaired its efficiency as an order of discharge fully warranted by the act of 1869. If the discharge was good under that act, we understand it to be conceded that the *336 defendant was thereby relieved of any liability to be further imprisoned because of that sentence.
Being of the opinion that the order of discharge was good under the act of 1869, although it followed the form that would have been used in a proceeding under the act of 1883, we must further conclude that the learned judge below fell into error in ordering a commitment of the appellant under the original sentence.
The order of the court of quarter sessions committing the defendant to the Luzerne county prison until the sentence of February 4, 1888, be complied with is reversed and set aside, and the prisoner is discharged.
Porter, J., dissents.